J-S24021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: S.E., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| | No. 1514 MDA 2015 |

Appeal from the Dispositional Order July 8, 2015
In the Court of Common Pleas of Lancaster County
Juvenile Division at No(s): CP-36-JV-0000277-2015

BEFORE:  GANTMAN, P.J., BOWES, AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 18, 2016**

S.E. appeals from the July 8, 2015 dispositional order finding him in need of treatment and rehabilitation at the Alternative Rehabilitation Communities Program in Harrisburg.  This dispositional order was entered after the court adjudicated Appellant delinquent based upon acts that constitute simple assault and harassment. We affirm.

N.D., a high school student, testified as follows.  On April 11, 2015, at approximately 9:45 p.m., N.D. and two of his friends went to a party in Rohrerstown that was attended by approximately twenty-five to thirty people, including some college students.  N.D. reported that they left with two high school girls after forty-five minutes because the "college kids were, kind of, looking down on the younger kids, telling us we shouldn't be there,

and just trying to control us and get us out of there." N.T., 6/18/15, at 7. After dropping off one of the girls, N.D. started driving toward his home on 101 Strickler Run Drive, West Hempfield Township, Lancaster.

When he was about five minutes away from the residence, N.D. noticed that his car was being tailgated by another vehicle with its headlights on high beam. He parked in front of his neighbor's house, exited the car, and started walking up his driveway. At that point, the car that had been tailgating N.D.'s car stopped in front of the driveway. Appellant opened the window of the car and asked N.D. if he had attended the party. N.D. recognized Appellant because Appellant had been there. *Id*. at 10. N.D. responded, "Yes, I was," and began to "walk towards the car." *Id*.

At that point, Appellant "pointed a gun through the window at [N.D.'s] chest and said something" that the victim did not understand. *Id*. at 11. N.D. displayed his hands and said, "[R]elax. Don't do anything." *Id*. N.D. started to back up and continued to ask Appellant to relax. Appellant exited the car and walked toward N.D. repeating a phrase[1] that N.D. did not understand and pointing the gun at the victim. N.D. froze, and Appellant punched N.D. in the face with a closed fist. *Id*. at 13. After striking N.D., Appellant returned to the car, which left the area.

_____

[1]  Appellant is Hispanic, and the inference drawn by this Court is that Appellant, who needed an interpreter at the adjudicatory hearing, was speaking Spanish.

N.D. said that he did not know Appellant's name, but was able to clearly see Appellant's face because there was an interior car light and a garage door light illuminating the area. *Id*. at 12. N.D. went inside and immediately reported the incident to his parents, who called police. N.D. was told by someone that Appellant might be the perpetrator. N.D. looked up Appellant on Facebook and testified, "[A]s soon as I saw pictures, I knew it was him." *Id.* at 17.

N.D. was cross-examined with the fact that he initially identified his assailant to police as an "unknown black male" even though Appellant was light-skinned. *Id*. at 16. The police report also indicated that N.D. told police that Appellant had left his gun in the car, but the victim adamantly denied that aspect of the report. N.D. repeated that Appellant approached him with the gun in his left hand and said that he did not tell police otherwise so that the police report was incorrect in that respect.

West Hempfield Police Officer Thomas J. Ziegler responded to the call. He described N.D. as very shaken by the incident. Officer Ziegler stated that his notes about what the victim told him on the night of the incident were not detailed and may have been inaccurate regarding whether Appellant carried the gun from the car. Officer Ziegler explained that he was concerned about the victim, and he told N.D. to return to the police station after he was calmer. N.D. returned to the police station and told Officer Ziegler that Appellant was the perpetrator of the assault. Officer Ziegler

attempted to speak with Appellant, but was unable to locate him. Officer Ziegler "was advised by Juvenile Probation that [Appellant] had absconded or was missing ever since the date of the incident." *Id*. at 26-27.

The juvenile court found "the testimony of the victim [N.D.,] to be credible in all respects" and adjudicated Appellant delinquent for committing acts that constitute simple assault and harassment. *Id*. at 46. The juvenile court also addressed the fact that N.D. told police that Appellant was black while Appellant is light-skinned. The court stated that, "having had the opportunity to observe the juvenile defendant here in the courtroom, that any identification of him as a black male under the circumstances testified to given his complexion and appearance to the Court here in the courtroom" would be a reasonable mistake. *Id*. at 46.

The dispositional order was filed on July 8, 2015. Appellant thereafter presented a timely optional post-disposition motion, raising an averment that his adjudication was against the weight of the evidence. The within appeal was timely filed following denial of that motion. Appellant raises the following issue:

> I. Was the trial court's finding that the juvenile committed the offenses of Simple Assault and Harassment against the weight of the evidence where the evidence showed that the victim gave multiple conflicting accounts to law enforcement regarding what happened on the evening in question, both the police and victim acknowledged in court that the juvenile did not match the description of "a black male" provided to the police on the evening in question, and the trial court asked leading questions to support [the]

in-court identification of the juvenile when the victim was never shown a line-up and the police did not independently investigate information provided to them by the victim.

Appellant's brief at 5.

Succinctly, Appellant's position is that N.D.'s in-court identification of him as the perpetrator was not credible for a variety of reasons and that his adjudication therefore was against the weight of the evidence. Our standard of review is settled:

> We may only reverse the juvenile court's adjudication of delinquency if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the juvenile court palpably abused its discretion in ruling on the weight claim.
>
> Hence, a juvenile court's denial of a weight claim is the least assailable of its rulings...

*In re J.M.*, 89 A.3d 688, 692 (Pa.Super. 2014) (citation omitted). Of particular significance herein are two precepts. First, this Court is required to "defer to the credibility determinations of the juvenile court, as these are within the sole province of the finder of fact. The trier of fact, while passing upon the credibility of witnesses, is free to believe all, part, or none of the evidence." *Id*. at 691 (citation omitted). Additionally, "Conflicts in the evidence and contradictions in the testimony of any witnesses are for the fact finder to resolve." *Id*. at 692 (citation omitted). These precepts

prohibit us from overturning the credibility determinations made by the juvenile court.

The juvenile court was fully aware of all the facts that tended to impugn the credibility of N.D. It unequivocally rendered a determination that N.D. was believable. In its Pa.R.A.P. 1925(a) opinion, the juvenile court delineated why it concluded that the victim's post-incident report to police was not inconsistent with his trial testimony with respect to whether Appellant was still holding the gun after he left the car and why it believed that the victim was reasonable in describing Appellant as a black male. Based on the cogent analysis of the juvenile court, we cannot conclude that it palpably abused its discretion in ruling on Appellant's weight claim and the adjudication herein does not shock one's sense of justice. Hence, we affirm the dispositional order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/18/2016